(89 App. Div. 43.)

BRAUN v. VOLLMER et al.

(Supreme Court, Appellate Division, First Department. December 18, 1903.)

1 CONTRACT FOR PURCHASE OF LAND—RESCISSION—BURDEN OF PROOF.

Where one seeks to rescind a contract for the purchase of land on the ground that the title tendered is not marketable, in that a deed absolute on its face was in effect a mortgage, the burden of showing this is on him, if the record title tendered appears to be marketable.

2. REAL AND NOMINAL OWNERSHIP OF LAND—RECITAL IN AGREEMENT—EVIDENCE.

Evidence that a father conveyed land to his daughter subject to a mortgage, and that a subsequent agreement between him and the mortgagee contained a recital that the daughter was the owner of the equity of redemption, showed, in the absence of evidence to the contrary, that she was the real as well as the nominal owner.

3. CONVEYANCE TO MORTGAGEE—CONTEMPORANEOUS AGREEMENT—CONSTRUCTION—EVIDENCE.

Where a daughter conveyed land to a mortgagee in settlement of a foreclosure suit, evidence *held* to show that a contemporaneous agreement between her father and the mortgagee was in fact, as in form, an option.

to purchase the land from the mortgagee, and not an extension of the time of payment, though the consideration named is equal to the amount due on the mortgage.

4. SAME—DISCONTINUANCE OF FORECLOSURE ACTION—EQUITY OF REDEMPTION.
The owner·of an equity of redemption may, by conveying the premises to the mortgagee, discontinue an action for foreclosure, and cut off the right of redemption.

5. SAME—CONCURRENT OPTION—EFFECT.
The concurrent giving to a ·third person of an option to purchase land conveyed to a mortgagee in settlement of an action for foreclosure does not affect the absoluteness of the conveyance.

Patterson, J., dissenting.

Appeal from Special Term, New York County.

Action by Louisa Braun against Charles A. Vollmer and another, as executors. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

On the 3d day of May, 1902, the plaintiff and the defendants, as executors of the last will and testament of George Pfeiffer, deceased, entered into a contract in writing by which the defendants agreed to sell and the plaintiff agreed to purchase on the terms therein specified the house and lot known as No. 251 East Tenth street, in the borough of Manhattan, city of New York. The plaintiff refused to perform upon the ground that the title tendered by the defendant was not marketable, and he brings this action to recover the down payment, and the costs and expenses of having the title examined. The defendants, in their answer, deny that the title tendered was not marketable, and, in a counterclaim, demand specific performance of the contract. The trial court decided that the title was marketable, and decreed specific performance.

It appears that in November, 1867, the premises were conveyed by the then owner of the record title to one Gabriel J. Wolff. In February, 1875, Wolff and his wife executed a mortgage upon the premises to the Dry Dock Savings Institution to secure the payment of $9,000, and on the 1st day of May, 1875, Wolff and his wife executed another mortgage thereon to Isaac Feldenheimer to secure the payment of $4,000. The $4,000 mortgage was duly assigned to Ernst Von Au on the 29th day of May, 1875. On the 2d day of January, 1879, Wolff and his wife conveyed the premises to their daughter Eugenie J. Wolff. The grantee, however, did not assume the mortgages. In the month of February thereafter, Von Au commenced an action to foreclose his mortgage, making Gabriel J. Wolff, who was liable on the · bond, a party defendant, and filed a lis pendens therein on the 26th day of February, 1879. Eugenie J. Wolff conveyed the premises to the plaintiff in the foreclosure action by warranty deed dated the 16th day of April thereafter, subject to both mortgages and certain unpaid taxes and water rates, and with a covenant against other incumbrances and for quiet enjoyment. The deed was signed on the day of its date, and was acknowledged on the day following, and duly recorded on the 18th day of April, 1879. At the time of the signing of this conveyance a stipulation for the discontinuance of the foreclosure action was formally executed, and the foreclosure action was discontinued on the·18th day of April, 1879; but the notice of pendency was not canceled until the month of April, 1884, at which time Von Au satisfied the mortgage of record. On the day the stipulation of discontinuance and deed to Von Au were signed, Von Au signed and sealed an instrument in writing as follows:

"Agreement made this sixteenth day of April, 1879, between Ernst Von Au, of the City of New York, and Gabriel J. Wolff of the same place, party of the second part:

"Witnesseth, Whereas, said party of the first part holds a second mortgage on premises 251 East Tenth Street, New York City of $4,000 for the fore-

¶ 4. See Mortgages, vol. 35, Cent. Dig. § 816.

closure of which an action is pending in the Supreme Court of the State of New York for the County of New York, between Ernst Von Au, plaintiff, and Gabriel J. Wolff, Eugenie J. Wolff and ano., defendants.

"And whereas, Eugenie J. Wolff the daughter of Gabriel Wolff, is the present owner of redemption of said mortgaged premises, and

"Whereas, the parties to said action have determined upon a settlement thereof, by which settlement Eugenie J. Wolff is to give a warranty deed to Ernst Von Au, subject to the following encumbrances: A first mortgage of $9,000, interest thereon from Feby. 1, 1879, to May, 1879, 6%, $135; a second mortgage of $4,000, interest thereon from Nov. 1, 1878, to May, 1879, at 7%, $140; unpaid taxes for 1877, $198.75; interest thereon from Oct. 9, 1877, to May 1, 1879, $37.21; unpaid taxes for 1878, $191.25; int. thereon from Oct. 11, 1878, to May 1, 1879, $12.50; unpaid Croton water from May, 1878, to May, 1879, $13.00; do do for 1877 & int. $4.50; total $13,732.21.

"And whereas, the costs and disbursements and plaintiff's attorney's counsel fee in said foreclosure action have been fixed at the sum of $225.00 which added to the $13,732.21, makes a total of $13,957 21/100.

"Now this indenture witnesseth, that the party of the first part, for and in consideration of the sum of one dollar to him in hand paid at or before the ensealing and delivery of these presents, by the said party of the second part, the receipt whereof is hereby acknowledged, agrees to and with the said party of the second part, that upon the payment of the said sum of Thirteen thousand nine hundred and fifty-seven 21/100 dollars, to him the said party of the first part, by the said party of the second part, or his legal representatives, on or at any time before the 31st day of July, Eighteen hundred and eighty, he will convey the said premises, number 251 East 10th Street, New York City, unto the said party of the second part, his heirs, executors or assigns.

"And it is understood and agreed that the said Nine thousand dollars, first mortgage or another of that amount in its place, be taken as a part payment of said $13,957.21 on such conveyance aforesaid.

"In witness whereof, the parties hereto have hereunto set their hands and seals the day and year aforesaid."

This instrument was acknowledged and recorded on the 18th day of April, 1879, and shortly after the recording of the deed to Von Au. No facts are shown with reference to the possession, except that it appears that Wolff died on the premises on the 18th day of March, 1881. The defendants offered to show that he remained in possession under a lease, and paid rent to Von Au, who paid the taxes, but this was excluded on plaintiff's objection. Wolff did not pay or tender the amount specified in the agreement executed to him by Von Au, and, so far as appears, no claim by virtue of said agreement was made by him, or has been made by his heirs since his decease. Von Au retained title to the premises until the 25th day of November, 1887, when he conveyed the same to the testator of the defendants. It appears that the executors have authority to convey, and no question is raised with reference to the sufficiency of the title, except concerning the effect upon the deed to Von Au of the agreement executed by him to Wolff.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

R. M. Martin, for appellant.
Isidore Buxbaum, for respondents.

LAUGHLIN, J. The plaintiff contends that the settlement of the foreclosure suit was a mere extension of time for payment of the mortgage indebtedness, and that therefore the deed from Eugenie J. Wolff to Von Au was in effect a mortgage, under which there is an outstanding right to redeem in the heirs of Gabriel J. Wolff. This may be so, but it does not appear from the facts disclosed by the record. Of course, it is competent to show by parol evidence that a

deed absolute upon its face was intended as security for a debt, which renders it in effect a mortgage. But the burden of showing these facts dehors the record rests upon the plaintiff, provided the record title, as tendered, appears to be marketable. The plaintiff has refused to perform, and he presents no facts in justification, excepting those set forth in the statement of facts. Therefore his contention must fail if it does not appear from the documents themselves that the deed was intended as a mortgage. Facts may exist dehors the record which will defeat a good record title, but this does not impose upon the vendor the burden of negativing their existence.

It is suggested that Gabriel J. Wolff was the owner of the equity of redemption, and that his daughter merely held the nominal title, but this is disproved by the record. It appears that she held the absolute title prior to the commencement of the foreclosure suit, and there is nothing to show that her father was the equitable owner. Furthermore, the agreement running from Von Au to Wolff expressly recites that the daughter was the owner of the equity of redemption.

We are of opinion that the agreement was merely intended as an option to Wolff to purchase the premises within the time specified at the consideration therein mentioned. Attention is drawn to the fact that the consideration equaled the gross amount of the items of incumbrances upon the property, together with the interest and accumulations thereon to the date of the agreement; but it will be observed that Von Au agreed to convey the premises to Wolff for this specific sum, without interest, one year three months and a half thereafter. There is nothing to indicate that there was any defense to the foreclosure suit, or to Wolff's liability for the deficiency. The fair inference is that the parties anticipated that, if there should be a foreclosure sale at that time, there would be a judgment of deficiency against Gabriel J. Wolff, which would have been of doubtful value, for otherwise it is difficult to understand how the holder of the mortgage would be willing to take title and sell the premises more than a year and a quarter later for the amount to which he was entitled at that time. But the motives of the parties are immaterial, excepting as they shed light on the question as to whether the deed was, as it purports to be, intended to be absolute and to discharge the indebtedness. As bearing on this question, the fact that Gabriel J. Wolff did not obligate himself to pay the amount specified in the option is significant, although not controlling. Morris v. Budlong, 78 N. Y. 543; Holmes v. Grant, 8 Paige, 243; Fullerton v. McCurdy, 55 N. Y. 637. It would seem that he desired merely an opportunity of purchasing the premises, for the consideration stated, should he be able and disposed to do so prior to the expiration of the time specified.

The fact that the conveyance was made to Von Au subject to the mortgage which was being foreclosed is pointed out as indicating an intent on the part of the parties to keep the mortgage alive. The inference from this fact is rather, we think, that Eugenie J. Wolff, in executing a conveyance with a covenant against incumbrances, conveyed subject to this mortgage in order to protect herself against liability on the covenant. Of course, the mortgage might have been satisfied by Von Au before the conveyance was executed to him, but

it was not material which form the transaction took. This mortgage merged in the deed the moment Von Au obtained title. The fact that it was subsequently formally discharged in order to remove any possible question is of no consequence.

The rule is undoubtedly firmly settled in our jurisprudence that, where a deed absolute in form was in fact intended as security for an indebtedness, it is, in equity, a mortgage, with a right of redemption remaining in the grantor, which it is not competent for him to relinquish by any agreement made at the time of executing the deed. Pardee v. Treat, 82 N. Y. 385; Macauley v. Smith, 132 N. Y. 524, 30 N. E. 997; Mooney v. Byrne, 163 N. Y. 91, 92, 57 N. E. 163; Hughes v. Harlam, 166 N. Y. 432, 60 N. E. 22. But this rule has no application to the case at bar, as we view the facts. It is perfectly competent for the owner of an equity of redemption in an action for the foreclosure of a mortgage to convey the premises to the holder of the mortgage, and discontinue the action, and thus cut off any right of redemption. That is precisely what was done by the owner of the equity of redemption in this case. The mere giving of a concurrent option to purchase, either to a third party, as was done here, or even to the owner of the equity of redemption, does not affect the absoluteness of the deed. Randall v. Sanders, 87 N. Y. 578. The material inquiry in this class of cases is whether the debt was extinguished. Robinson v. Cropsey, 2 Edw. Ch. 138, 147, 148; Davis v. Thomas, 1 Russ. & M. 506; Randall v. Sanders, supra.

To infer from these facts that the mortgage indebtedness was intended to remain, and that the conveyance was intended merely as security therefor—which is the only thing on which it could be said that the title is defective—is to do violence to the written instruments by which the parties have recorded their agreements, and to indulge in unwarranted speculation. We are therefore of opinion that the title tendered by defendants was free from reasonable doubt, and that specific performance of the contract was properly decreed.

It follows that the judgment should be affirmed with costs. All concur, except PATTERSON, J., who dissents.